VAN, Appellant, v. GUNDERSON, Governor, et al, Respondents.

(225 N. W. 54.)

(File No. 6411.   Opinion filed April 13, 1929.)

*Clark & Henderson,* of Yankton, and *Sutherland, Payne & Linstad,* of Pierre, for Appellant.

*Buell F. Jones,* of Britton, and *E. D. Roberts,* of Pierre, for Respondents.

BROWN, J.   Plaintiff filed a claim with the rural credit board for $200 for services and $141.37 for expenses claimed to be due him as an employee of the rural credit board for the month of March, 1925.   The board refused to allow the claim and plaintiff applied for a writ of mandamus to compel its allowance and payment.   The trial court found that during his period of employment plaintiff had presented claims for, and been allowed and paid as mileage for the use of his car, the sum of $4,148.50 in excess of the amount allowed by law, and entered judgment dismissing the writ, from which judgment and an order denying a new trial plaintiff appeals.

Plaintiff's employment began in December, 1918, and was for no definite term.   He testified: "I was merely employed at the will of the board, and that was my understanding."   The contract was oral, and he was to get $5 a day and 25 cents a mile for the use of his car.   His duties were examining and reporting on lands offered as security for loans from the rural credit board, and collecting interest when due.   The law at the time plaintiff was employed authorized the rural credit board to employ such employees as it might deem necessary to conduct its business, and to fix the salaries or fees of such exployees.   On June 30, 1920, chapter 85 of the Second Special Session of the Sixteenth Legislature went into effect.   This act placed the management and control of all automobiles which are used in the transaction of the state's business in the capitol commission, and made it the duty of the commission, on or before the 1st of May of each year, to prescribe a rate per mile which shall be paid to those operating privately owned cars on state business, giving to the commission authority to change the rate at any time in keeping with the actual cost of operation.   After this act took effect plaintiff continued to render statements for the use of his automobile at 25

cents a mile, which were allowed and paid by the rural credit board, until he had received $4,148.50 in excess of the rate fixed by the capitol commission. In October, 1924, plaintiff was placed on a salary basis of $200 a month and furnished with a state-owned car. On this appeal he contends that the rural credit board is "an independent agency," none of its business transactions passing through the state auditor's office, and that, therefore, the act of June 30, 1920, does not apply to its officers or employees. The rural credit board is certainly not independent of the state; it is a branch of the state government; and judicial notice is taken that it is a bureau of the state, that its officers are public officers, and therefore its employees are necessarily state employees. State v. Ewert, 52 S. D. 619, 219 N. W. 817. We have no doubt that the act of June 30, 1920, applies to officers and employees of the rural credit department as to all officers and employees of the state, and that after the act took effect the rural credit board had no authority to allow its employees a rate per mile for the use of their privately owned cars in excess of that established by the capitol commission.

Section 2 of the act contains the following clause: "It shall be lawful for the State Auditor to issue warrants covering automobile expense at the rate so specified by said Capitol Commission, and upon the sworn statement thereof of parties using such cars."

Appellant argues that since the state auditor does not issue warrants for the rural credit board's disbursements, this clause indicates that the Legislature did not intend the act to apply to rural credit officers or employees, but the plain meaning of this clause is simply that the auditor is authorized to issue warrants upon the sworn statement of the parties using their privately owned cars, without the necessity of further proof of the amount of mileage incurred in state business, and without the statement being passed upon by any other body. The clause does not imply any intention that employees of departments of the government whose expense accounts have not to pass through the hands of the state auditor shall be exempt from the provisions of the act. The act expressly provides that all acts and parts of acts in conflict with its provisions are repealed, and, in so far as the rural credit board, prior to its passage, had authority to allow whatever sum as mileage for privately owned cars that it saw fit, such authority was repealed by

the act, and the rural credit board became subject to the provisions of the act.

■ Appellant's contention that the act is void as to him, because impairing the obligation of his contract, is plainly untenable. His own testimony is that he was employed by the day, merely at the will of the board. The day after the capitol commission first fixed the rate per mile for the use of privately owned cars on state business, on December 8, 1920, plaintiff entered upon a new contract which was subject to those rates. He had no contract with the rural credit board, whose obligation could be impaired by the rate-fixing order of the capitol commission.

The case of Hall v. Wisconsin, 103 U. S. 5, 26 L. Ed. 302, cited by appellant in support of this contention, does not bear out his claim. There the contract made by the state with Hall was for a definite term, entered into May 29, 1858, "to continue till the third day of March, 1863," and it was properly held that the Legislature could not pass an act abrogating the contract without the state becoming liable to plaintiff. In the later case of Missouri v. Walker, 125 U. S. 339, 8 S. Ct. 929, 31 L. Ed. 769, this distinction is pointed out, and it is held that, where there is no particular term of employment, the Legislature can terminate it at will.

Whether appellant would have quit the job had he not been granted mileage for his car in excess of the rate fixed by the capitol commission, or whether he would be entitled to recover on quantum meruit for his services during the period he was paid the excessive mileage rate, if required to refund the excess, are questions mooted by appellant, but are not before us for consideration.

■ As we have seen, the statute authorized the rural credit board to employ such assistants and laborers and other employees as it deems necessary, and to fix their compensation, and the procedure incidental to such employment is not otherwise prescribed. It necessarily follows that the rural credit board had discretionary power in regard to the payment of the salaries of its employees, and, if its members believe that they have a valid counterclaim against the claim of any employee, they certainly have a right to disallow the employee's claim until the counterclaim shall have been adjusted. In the present case the board has acted and disallowed the claim, and the court has no power by mandamus to interfere with that discretion. Mandamus could compel action, but could

not reverse the action taken, where such action is discretionary, and compel the board to act in a diametrically opposite manner. Sawyer v. Mayhew, 10 S. D. 18, 71 N. W. 141.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur.

CAMPBELL, J. (concurring specially). I do not believe that appellant has made any showing justifying the issuance of a writ of mandamus, and therefore think that the judgment denying the writ should be affirmed.